*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF KODI VAWTERS, by Chapter 7 Trustee MICHAEL A. STEVENSON, ESTATE OF DEANDRE DAVIS, by ARLETTE DAVIS, Personal Representative, and COMMUNICARE MICHIGAN, LLC,

UNPUBLISHED
August 8, 2019

Plaintiffs-Appellees,

v

No. 342805
Wayne Circuit Court
LC No. 16-003432-NF

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellant,

and

BERYL ANNE FLETCHER and MARSHA RUCKER,

Defendants.

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

In this action in which plaintiffs seek personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, defendant Auto Club Insurance Association (ACIA) appeals by leave granted the trial court's order denying ACIA's motion for summary disposition. Kodi Vawters and Deandre Davis were operating all-terrain vehicles (ATVs) side by side on a public roadway at excessive speed when tires of the two ATVs sideswiped each other, causing Vawters and Davis to lose control, veer off in opposite directions, and to eventually be ejected

-1-

from their respective ATVs. Vawters and Davis were both injured, and, ultimately, Davis died.[1] Plaintiffs' position is that the initial collision or contact between the two ATVs occurred when defendant Beryl Anne Fletcher backed her vehicle out of a driveway and into the street, causing Vawters and Davis to quickly brake and take evasive action in response. ACIA—Fletcher's no-fault insurer—contends that evidence was lacking to establish an actual objective need for Vawters and Davis to immediately brake and take evasive action. ACIA claims that the pair had plenty of room to safely slow down or otherwise avoid Fletcher's vehicle. MCL 500.3105(1) provides that a no-fault insurer "is liable to pay benefits for accidental bodily injury *arising out of* the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." (Emphasis added.) We hold that the trial court correctly ruled that the documentary evidence, when viewed in a light most favorable to plaintiffs, revealed that a genuine issue of material fact exists regarding whether the injuries and death arose out of the operation and use of a motor vehicle, i.e., Fletcher's vehicle. Accordingly, we affirm.[2]

Vawters and Davis were driving their ATVs down a residential street, Annott Avenue, in violation of city ordinance. The speed limit on the street was 25 miles per hour, and Vawters and Davis were going approximately 45 to 50 miles per hour at the time the incident began to unfold. They were operating the ATVs side-by-side as they proceeded northbound on Annott. The evidence regarding what occurred next is a bit confusing. Fletcher testified in her deposition that she was visiting her brother at her mother's house located on Annott and had parked on the street in front of the house.[3] When she left the home, which is located on the east side of Annott, Fletcher pulled out into the northbound lane of travel.[4] Fletcher then almost immediately, within 20 feet, made a left turn into the driveway of a home where Christopher Bell lived, which was located on the west side of Annott. Fletcher did so with the intention of backing out of Bell's driveway so she could proceed south on Annott. According to Fletcher, as she pulled away from the curb in front of her mother's house and as she was making the left-hand turn into Bell's driveway, she had not yet noticed the ATVs, which were approaching from the south on Annott. Fletcher testified that she first saw and heard the ATVs when she was in Bell's driveway. The ATVs were heading northbound on Annott up "the middle of the street." She indicated that her

---

[1] Chapter 7 bankruptcy trustee Michael A. Stevenson requests the recovery of PIP benefits for Vawters's bankruptcy estate. And Arlette Davis, as personal representative, is pursuing PIP benefits on behalf of Davis's probate estate. Plaintiff Communicare Michigan, LLC, seeks reimbursement for rehabilitation services provided to Vawters.

[2] Third-party tort claims against defendant Marsha Rucker were dismissed pursuant to a stipulation. Third-party tort claims against Fletcher were summarily dismissed by the trial court on the basis that she was not negligent, and that, even if some negligence could be attributed to her, Vawters and Davis were more than 50% at fault for the accident. This appeal does not pertain to the third-party tort claims.

[3] The parties only included snippets from the various depositions in submitting documents relative to summary disposition.

[4] When asked whether she got in her car at her mother's house and "pulled out into the street," Fletcher responded, "I'm already in the street."

vehicle was protruding into Annott "just a tad bit."[5]  Fletcher asserted that when she first saw the ATVs, they were "[p]robably a football field" away from her.  She remained in place, mostly in Bell's driveway, with the intent to allow the northbound ATVs to pass.  Fletcher testified, "And then I don't know what happened in the street and they collided . . . ."

In Bell's deposition, he testified that Fletcher "pulled out into my driveway."  Bell then agreed that Fletcher had first pulled out of her driveway, which clearly was a reference to Fletcher's mother's driveway, and then backed into Bell's driveway.  Bell further testified:

> *Q.*     Did she [Fletcher] back out into your driveway?
>
> *A.*     Yes.
>
> *Q.*     Okay, but, so she was one house away but backed out into your driveway?
>
> *A.*     Yes.
>
> *Q.*     And you saw her actually do that?
>
> *A.*     Yes.

Bell also indicated that when Fletcher "pulled out" of his driveway, the two ATVs started swerving; however, Bell stated that he did not see the ATVs strike each other.  Bell testified that after the accident, Fletcher's vehicle "was still basically in the street."  Bell asserted that before the police arrived, he thought that Fletcher had attempted to move her vehicle but then stopped when Bell's aunt told her not to move it.  Bell also testified that the ATVs were two houses down when Fletcher backed out of the driveway.

Although at the time of his deposition he claimed to have no memory whatsoever of the accident, the day after the accident Vawters made a statement to Detective John Velasco describing the event.  Vawters indicated that he and Davis were driving side by side, that they were going about 45 miles per hour, that they saw a vehicle back out of a driveway, that he and Davis slammed on their brakes, that the tires of the two ATVs "slapped each other," and that Vawters veered to the right and Davis veered to the left.[6]

Officer Michael Garrison prepared the accident report in the case.  In his deposition, Officer Garrison indicated that when he arrived at the scene, Fletcher's Jeep "was actually still parked in the street."  Officer Garrison opined that the cause of the accident "was from the high

---

[5] Fletcher testified that after the accident and after the police arrived, she moved her Jeep a little bit, moving it "all the way in the driveway."

[6] At his deposition, Vawters testified that he had no recollection of driving his ATV on the day of the accident, of being at the scene of the accident, or of talking to any police officers or other persons about the accident.

rate of speed and the reckless manner that the ATVs were operating in the street, which they should never have been." He attributed zero fault to Fletcher for the accident. Officer Garrison, along with Detective Velasco, both testified that the speed limit on Annott was 25 miles per hour and that Vawters and Davis were going 45 to 50 miles per hour when they lost control. Officer Christopher Weitzel testified in his deposition that he believed that Fletcher was not careless, negligent, or at fault with respect to the accident. On the basis of yaw marks and other evidence at the scene, Officer Weitzel estimated that the distance between Fletcher's vehicle and the point where the ATVs struck each other was 280 to 300 feet.

There was evidence that after the ATVs came into contact with each other upon attempting to stop and take evasive action, the ATVs veered off in opposite directions. Davis's ATV veered to the left and struck a car that was parallel parked on the west side of Annott (southbound side),[7] at which point Davis was ejected, sustaining an ultimately fatal head injury when he struck the pavement. Vawters's ATV veered to the right, where he was struck by Davis's now-driverless ATV, which had careened off Rucker's parked car. Vawters was thrown off his ATV from this impact and was injured. Vawters's driverless ATV proceeded slowly to the north, finally coming to a rest upon bumping into Fletcher's Jeep.

ACIA's expert accident reconstructionist, Weldon Greiger, authored an opinion letter based on police and crash reports, photographs, and deposition testimony. He made the following findings:

> The collision with the Chrysler Sebring [Rucker's vehicle] occurred at about 180 feet from the Jeep [Fletcher's vehicle] and the collision between the [ATVs] occurred over 300 feet from the Jeep. There was more than enough distance for the [ATVs] to come to a stop before colliding with the Jeep at any speed of 50 mph or slower. The police report indicated the speed limit was 25 mph. At that speed, even with casual braking, the [ATVs] could stop, including perception-response time, in about 140 feet. Even if you assume the performance of the Jeep caused concern for the [ATV] drivers, and assuming a speed of 50 mph . . ., with moderate braking, the [ATVs] could have stopped in about 300 feet and avoided a collision with the Jeep had they not collided. Having said that, there was at least 15 feet of clear roadway behind the Jeep for the [ATVs] to maneuver. Not to mention the available greenbelt and sidewalk. These were [ATVs] after all.

> * * *

> This crash was caused by two speeding [ATVs]. The [ATVs] were traveling at speeds twice or nearly twice the speed limit. They failed to take appropriate actions to avoid colliding with each other. The excessive speed made it impossible to recover from that impact. City of Detroit ordinances prohibit the operating of [ATVs] on city streets.

---

[7] This vehicle was owned by defendant Marsha Rucker.

To suggest that the [ATV] riders reacted to the Jeep driven by Beryl Fletcher is remarkable. The physical evidence does not support the cause of this crash to be a reaction to the maneuvers of the Jeep. The [ATVs] collided more than 300 feet from the Jeep. . . . .

A claim attributing any fault to Ms. Fletcher because she should have seen the [ATVs] ignores the well documented fact that it is difficult for the average driver to determine the speed of oncoming autos, pickups and SUVs, much less the smaller [ATVs] which were speeding. The police report correctly assigned a hazardous action of reckless driving to both [ATV] drivers and assigned no hazardous action to the Jeep driver.

Plaintiffs' expert accident reconstructionist, Daniel G. Lee, authored an opinion letter based on police and crash reports, photographs, mathematical and computer analyses, deposition testimony, and personal inspection of the accident site. He made the following findings:

The ATV[] [drivers] . . . may have observed the Jeep . . . backing from the driveway at [Bell's] house . . . when they were approximately 370 feet from the Jeep . . . [,]which was turning and backing out of the driveway. The first marks on the roadway made by the ATVs were approximately 279 feet from the Jeep . . . that was creating an emergency situation by backing into the roadway.

If the ATVs were traveling at the posted speed limit, Ms. Fletcher's vehicle backing into the roadway would have been a less severe emergency. . . . .

* * *

At this time it is unknown why Ms. Fletcher backed out of her own driveway on the east side of the street, turning and backing her Jeep . . . in a south direction. She stopped and pulled forward or north and turned into . . . Bell's driveway on the west side of the street and then backed straight into the roadway. No matter what her intentions were, she created a conflict or dangerous situation. The police interview of Ms. Fletcher indicates that she observed the two ATVs[,] however, she still proceeded into the street.

The emergency situation created was enhanced as a result of the two ATV's speeds and various attempts of evasive actions. While traveling side by side the ATVs should have been easily visible and observed by individuals to the north. Each ATV had two headlamps and traveling side by side these four headlamps should have made them highly visible.

Plaintiffs filed the lawsuit seeking, in part, PIP benefits. ACIA filed a motion for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiffs failed to show that Fletcher's vehicle was in any way involved in the collision between the two ATVs. ACIA also argued that Lee's expert opinion was based on assumptions and speculation. Plaintiffs maintained that Vawters and Davis reacted to Fletcher's vehicle's pulling out of Bell's driveway, causing them to brake, collide, and then crash. Both men were also ejected from their ATVs.

ACIA filed a reply brief raising the additional argument that Vawters's statement given to Detective Velasco the day after the accident constituted inadmissible hearsay.

The trial court denied ACIA's motion for summary disposition, explaining that it disagreed with ACIA's assessment that Fletcher's vehicle was not involved in the accident and was merely passively present. The trial court emphasized that the required analysis "does not involve consideration of the extent to which the parties are at fault in the accident." The trial court also ruled that Vawters's statement to police describing the incident constituted hearsay that did not meet the requirements of the exception in MRE 803(5) (recorded recollection); however, the court found that the statement was admissible under MRE 803(24) ("catch-all" hearsay exception based on guarantees of trustworthiness). ACIA appeals by leave granted. *Estate of Kodi Vawters v Auto Club Ins Ass'n*, unpublished order of the Court of Appeals, entered March 16, 2018 (Docket No. 342805).

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). We also review de novo issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). When there is no dispute about the facts, the issue whether an injury arose out of the use or operation of a motor vehicle is a legal issue for a court to decide and not a factual one for a jury. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 251; 901 NW2d 534 (2017). The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 571; 918 NW2d 545 (2018). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id.* Preliminary questions of law bearing on the admissibility of evidence, however, including the interpretation and application of statutes, rules of evidence, and legal doctrines, are reviewed de novo by this Court. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999); *Mueller*, 323 Mich App at 571. A trial court necessarily abuses its discretion when it makes an incorrect legal determination. *Mueller*, 323 Mich App at 571.

In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the governing principles in regard to a motion for summary disposition brought under MCR 2.116(C)(10), explaining:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible

evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), the Michigan Supreme Court articulated the principles that govern statutory construction:

When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

In a footnote in the fact section of its brief, ACIA contends that Vawters's statement to police is inadmissible hearsay absent any exception. ACIA notes that the trial court found the statement to be admissible under MRE 803(24). ACIA states that although it "maintains its exception to the ruling, the statement nevertheless fails to provide any support for the legal issue of motor vehicle involvement presented." It does not appear that ACIA is actually raising an appellate argument challenging the trial court's evidentiary ruling. In its appellate brief, ACIA does not include the issue in the statement of questions involved. See MCR 7.212(C)(5) (brief must include "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal"); *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) ("Independent issues not raised in the statement of questions presented are not properly presented for appellate review."). Moreover, ACIA has effectively abandoned any argument regarding the admissibility of Vawters's statement, given that ACIA provides no discussion or analysis whatsoever of MRE 803(24), neither does it brief the application of MRE 803(24) to the facts in the case. *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015) ("This cursory argument, made without citation to relevant authority or application of the law to the facts, is insufficiently briefed, and we consider it to be abandoned.").

On appeal, ACIA presents the following argument:

Where two ATV riders, unlawfully speeding down a residential city street together, sustained injuries when they suddenly side-swiped each other, lost control and were ejected from their vehicles, the fact that [Fletcher's] motor vehicle was lawfully moving on the street *some 300 feet away* does not establish that the injuries "arose out of" the operation of the motor vehicle since, in the absence of facts establishing an actual, objective need for such evasive action, the

motor vehicle's mere presence is insufficient to trigger entitlement to no-fault benefits under MCL 500.3105(1).

Accordingly, we first turn our attention to MCL 500.3105, which provides, in relevant part, as follows:

> (1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

> (2) Personal protection insurance benefits are due under this chapter without regard to fault.

An ATV, or as described by our Legislature as an ORV or off-road vehicle, is not considered a "motor vehicle" under the no-fault act. MCL 500.3101(2)(i)(*iv*) and (k). However, an ATV driver involved in an accident, like a motorcyclist, is entitled to no-fault benefits for bodily injuries sustained in the accident if the injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle. See *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 395; 838 NW2d 910 (2013); *Bromley v Citizens Ins Co of America*, 113 Mich App 131, 134; 317 NW2d 318 (1982).

ACIA relies almost exclusively on this Court's decision in *Detroit Med Ctr*, 302 Mich App 392. In that case, the panel observed:

> There is no iron-clad rule as to what level of involvement is sufficient under MCL 500.3105. However, while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. The causal connection between the injuries and the motor vehicle cannot be extended to something distinctly remote. Moreover, the injuries must be more than tangentially related to the use of an automobile to trigger the entitlement to no-fault benefits. Actual physical contact between a motorcycle and a motor vehicle is not required to establish the requisite involvement of a motor vehicle in an accident as long as the causal nexus between the accident and the car is established. For a motor vehicle to be involved in an accident, it must actively, as opposed to passively, contribute to the accident, and have more than a random association with the accident scene. There must be some activity, with respect to the vehicle, which somehow contributes to the happening of the accident. [*Id.* at 395-396 (quotation marks, citations, and alteration omitted).]

The injury must originate from, have its origin in, grow out of, or flow from the operation or use of a motor vehicle. *Id.* at 397. A moving vehicle is generally much more likely than a motionless vehicle to be involved in an accident. *Id.*

In *Detroit Med Ctr*, a motorcyclist was traveling approximately 100 miles per hour on a dark and deserted side street when he observed bright headlights coming from a motor vehicle that was approaching him. "The motorcyclist applied his brakes to avoid colliding with the vehicle, causing the motorcycle to fishtail." *Id*. at 394. While never coming into physical contact with the motor vehicle, the motorcyclist lost control and crashed, sustaining serious injuries. *Id*. This Court set forth the following analysis and conclusion:

> In this case, there is no evidence that the motorcyclist needed to take evasive action to avoid the motor vehicle. Rather, the evidence only established that the motorcyclist was startled when he saw the approaching headlights and overreacted to the situation. And while fault is not a relevant consideration in determining whether a motor vehicle is involved in an accident for purposes of no-fault benefits, we believe that principle is limited to not considering fault in the cause of the accident, not whether the motor vehicle was actually involved in the accident. That is, had the motorcycle actually collided with the motor vehicle, we would not consider whether the motorcyclist or the motor vehicle driver was at fault in causing the accident, nor would we consider whether the motorcyclist could have taken evasive action and avoided the accident. But, where there is no actual collision between the motorcycle and the motor vehicle, we cannot say that the motor vehicle was involved in the accident merely because of the motorcyclist's subjective, erroneous perceived need to react to the motor vehicle. Rather, for the motor vehicle to be considered involved in the accident, the operation of the motor vehicle must have created an *actual* need for the motorcyclist to take evasive action. That is, there must be some activity by the motor vehicle that contributes to the happening of the accident beyond its mere presence. [*Id*. at 398-399 (citations omitted).]

The *Detroit Med Ctr* panel distinguished its facts from those in *Bromley*, 113 Mich App 131, and *Greater Flint HMO v Allstate Ins Co*, 172 Mich App 783; 432 NW2d 439 (1988). *Detroit Med Ctr*, 302 Mich App at 398. In *Bromley*, 113 Mich App at 133-135, this Court concluded that a motor vehicle was involved in an accident in relation to a motorcycle because the vehicle forced the motorcyclist off the road when the vehicle crossed over the center line. In *Greater Flint HMO*, 172 Mich App at 785, 788, this Court reached a similar conclusion when a motor vehicle made an unexpected and sudden stop, causing a chain reaction that ultimately resulted in two motorcyclists colliding into each other.

Here, we conclude that a genuine issue of material fact exists regarding whether the injuries and death arose out of the operation and use of Fletcher's motor vehicle. More particularly, in viewing the documentary evidence in a light most favorable to plaintiffs, we hold that there is a genuine issue of material fact concerning whether there was an actual need for Vawters and Davis to take evasive action by hitting the brakes of their ATVs in response to Fletcher's vehicle. Although there may be little or no reasonable dispute that "but for" Fletcher's presence and actions this accident would not have occurred, as pointed out in *Detroit Med Ctr*, this "but for" conclusion alone does not suffice to establish that the injuries arose out of the operation and use of Fletcher's Jeep.

There was evidence that Fletcher's Jeep was in the roadway, either a tad or fully, when Vawters and Davis were heading north on Annott. In the context of the (C)(10) motion, we must proceed on the assumption that Fletcher's vehicle was completely in the street, or was soon to be, when Vawters and Davis approached from the south. According to ACIA, the great distance between Fletcher's vehicle and the two ATVs at the moment that Vawters and Davis applied their brakes and collided is the crucial factor in this case. ACIA contends that like the motorcyclist in *Detroit Med Ctr*, the two men *overreacted* and could have safely slowed down and braked considering the distance or swung around Fletcher's Jeep, thereby avoiding the accident. Vawters, however, informed the police in his statement that he and Davis slammed on their brakes upon observing Fletcher's vehicle backing out of a driveway. A reasonable or legitimate inference arising from this statement is that there was an actual need to quickly hit the brakes in light of the movements of Fletcher's vehicle and her proximity to the ATVs. Additionally, Bell did testify that the ATVs were only two houses down when Fletcher backed out of Bell's driveway.

There can be no doubt that the speed at which Vawters and Davis were driving the ATVs affected how Vawters and Davis responded upon seeing Fletcher's vehicle in the street and their perceiving the immediacy of the danger. But we cannot rule against plaintiffs based on the fact that the two men were exceeding the speed limit or that they were violating city ordinance by operating the ATVs in the street because doing so would improperly inject the issue of fault into the equation in violation of MCL 500.3105(2) (PIP benefits are due "without regard to fault"). Rather, we believe that the proper analysis, and the one which a jury will ultimately have to engage in, entails the question whether there was an actual need for Vawters and Davis to take the action they did under the existing circumstances, including the fact that they were driving 45 to 50 miles per hour on the residential street. Thus, while speed is a consideration in determining "actual need" in analyzing whether the injuries arose out of the operation and use of Fletcher's vehicle for purposes of MCL 500.3105(1), the violation of the speed limit cannot serve as a basis to reject plaintiffs' requests for PIP benefits.

We recognize that there was evidence that the ATVs were 280 to 300 feet away from Fletcher's Jeep when Vawters and Davis braked and attempted to avoid an accident. Perhaps, assuming the accuracy of the distance, ACIA's expert is correct that Vawters and Davis could have safely braked or slowed down upon seeing Fletcher's Jeep in the street. But then it becomes an issue regarding how aggressively Vawters and Davis should have employed their braking systems—quick abrupt use of the brakes or a more controlled prolonged use of the brakes. Clearly, the path chosen by Vawters and Davis was such that they lost control of their ATVs, resulting in contact between their two vehicles. Taking into consideration Vawters's statement, Bell's deposition testimony, the speed of the ATVs, and the opinion of plaintiffs' expert, we agree that reasonable minds could differ with respect to whether there was an actual need for Vawters and Davis to aggressively brake as they did.[8]

---

[8] We find it unnecessary and choose not to delve into or opine as to whether it is a common or understandable driver reflex to slam on the brakes upon seeing a car back into the driver's lane

-10-

*Detroit Med Ctr* is somewhat distinguishable because in that case there was no indication that the motor vehicle had crossed or was about to cross into the motorcyclist's lane of travel; it appears that the motorcyclist was simply startled by the car's headlights. The Court found, as a matter of law, that the motorcyclist overreacted to the situation and that there was no actual need to take evasive action. Here, Fletcher's vehicle was at least partly—perhaps entirely—in the roadway. Therefore, there was evidence that her vehicle was an actual obstruction that had to be avoided one way or the other. Viewing the evidence in a light most favorable to plaintiffs, as we must, we find that the facts in the instant case are more analogous to those in *Bromley* and *Greater Flint HMO* than to those in *Detroit Med Ctr*. In sum, there is a genuine issue of material fact regarding whether Fletcher's vehicle was actively involved in the accident and whether there was an actual need for Vawters and Davis to respond as they did upon seeing Fletcher's vehicle. Accordingly, the trial court did not err in denying ACIA's motion for summary disposition.

We affirm. Having fully prevailed on appeal, plaintiffs may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

of travel, even from varying distances. Such a consideration would appear to be in conflict with the "actual need" analysis set forth in *Detroit Med Ctr*, but we take no position on the issue.