GREATER FLINT HMO v ALLSTATE INSURANCE COMPANY

McCLELLAND v ALLSTATE INSURANCE COMPANY

Docket Nos. 99859, 99860. Submitted April 20, 1988, at Lansing. Decided November 8. 1988. Leave to appeal applied for.

Kirby Hull, insured by Mid-Century Insurance Company, and Barbara Grossman, insured by the National Ben Franklin Insurance Company, were driving two of five automobiles involved in a chain reaction series of rear-end collisions. Robert Buda, insured by Allstate Insurance Company, managed to stop his vehicle before colliding with the five involved in the accident. Donald and Marjorie McClelland, also insured by Allstate, were among a group of motorcyclists riding behind Buda's vehicle. Due to swerving of other vehicles, the motorcycle the McClellands were riding came into contact with another motorcycle and Donald McClelland lost control of his motorcycle. The McClellands suffered injuries when their motorcycle went down. The McClellands and their subrogee, Greater Flint HMO, filed separate suits against Robert Buda in Genesee Circuit Court. Allstate defended the claims against Buda and brought third-party claims against Mid-Century and National Ben Franklin on a theory of joint liability under the no-fault act. The court, Robert M. Ransom, J., granted summary disposition in favor of Mid-Century and National Ben Franklin, finding that there was no involvement of the Hull and Grossman vehicles in the accident which resulted in the McClelland's injuries. Allstate appealed.

The Court of Appeals held:

The relevant inquiry is not whether there was physical contact between the Hull and Grossman vehicles and Buda's vehicle or the motorcycles, but whether a causal nexus can be established that would link the injuries incurred in the accident to a motor vehicle. In this case, there is a reasonable inference that a sudden lane change by the lead vehicle caused every driver in the chain of traffic, which included Grossman

REFERENCES

Am Jur 2d, Automobile Insurance §§ 231, 340 et seq., 353.

What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.

and Hull, to make an emergency stop which contributed to the McClellands' injuries. The evidence does not preclude a finding that the action of the lead vehicle caused everyone in the chain of traffic to react to a single hazard which, in turn, created a risk for each motorist in the line. If this should in fact be the case, then the insurer of each motorist so "involved" would share in the liability to the injured plaintiffs. Thus, there remains a question of fact whether the Hull and Grossman vehicles in these circumstances were sufficiently involved in the accident to trigger liability under the no-fault act. Summary disposition was improperly granted.

Reversed.

1. INSURANCE — NO-FAULT — MOTORCYCLES.

The no-fault act provides coverage for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, and while motorcycles are excluded from the definition of motor vehicles, the act permits a motorcyclist who suffers accidental bodily injury arising from a motor vehicle accident to claim no-fault benefits from the insurers of the motorists and vehicle owners involved in the accident and sets forth a priority scheme for determining the insurers' order of priority (MCL 500.3114[5]; MSA 24.13114[5]).

2. INSURANCE — NO-FAULT — MOTORCYCLES — PERSONAL PROTECTION BENEFITS.

A motorcyclist who is insured under an automobile policy may recover personal protection benefits for injuries suffered in an accident where there is a causal nexus between the accident and the ownership, operation, maintenance, or use of a motor vehicle whether or not the motorcycle and the motor vehicle actually collided or touched (MCL 500.3105[1]; MSA 24.13105[1]).

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *William J. Brickley*), for appellant.

*Charles F. Filipiak,* for Mid-Century Insurance Company.

*Jonathan M. Jaffa,* for The National Ben Franklin Insurance Company.

Before: KELLY, P.J., and SULLIVAN and M. J. SHAMO,* JJ.

PER CURIAM. Allstate Insurance Company appeals as of right a circuit court order granting summary disposition under MCR 2.116(C)(10) as to the third-party defendants, Mid-Century Insurance Company and the National Ben Franklin Insurance Company. We reverse.

A brief recitation of the facts and procedure below is helpful. On Sunday afternoon, August 26, 1984, an unidentified semitrailer truck traveled into the left-hand lane of southbound I-75 at the Zilwaukee Bridge in Saginaw. This maneuver forced the vehicle behind the truck to suddenly stop. An unidentified driver in the chain of traffic was unable to respond in time and, as a result, there were multiple rear-end collisions down the line to the appellees' insureds, Kirby Hull and Barbara Grossman. Both the trucker and the unidentified driver left the scene.

Robert Buda, Allstate's insured, saw the taillights in front of him and came to a sudden stop approximately ten feet behind the unidentified vehicle. Buda then felt a slight impact from behind, but saw no contact between his car and the oncoming motorcycles directly behind, nor could he say definitely that any motorcycle hit his vehicle. Unfortunately, as the motorcyclists attempted to stop, they collided. Plaintiffs Donald and Marjorie McClelland were among the motorcyclists injured.

The McClellands, also insured by Allstate, and their subrogee, Greater Flint HMO, each sued Buda. Allstate, the insurer of the vehicle operated by Buda, defended against the claims. Allstate

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

brought third-party claims against Mid-Century and National Ben Franklin, the insurers of Hull and Grossman, respectively, on a theory of joint liability under the no-fault act.

The parties filed various motions for summary disposition, agreeing, however, that the dispositive issue was whether any of the cars were sufficiently "involved" in the motorcycle collisions to trigger no-fault liability in their insurers.

After hearing a lengthy discussion on the merits and considering submitted deposition testimony, the court denied Allstate's motion and, also, plaintiffs' cross-motion for summary disposition against Buda. The court's decision was premised on a finding that a question of material fact existed whether there was an impact between Buda's vehicle and the motorcycles. This ruling is not challenged on appeal. However, on the basis of the absence of contact between the vehicles driven by Grossman and Hull, and the vehicle driven by Buda or the motorcycles, the court granted summary disposition as to third-party defendants, Mid-Century and National Ben Franklin. In essence, the court concluded that there was no evidence of any "involvement" of those vehicles. It is this ruling that is challenged by Allstate on appeal.

The no-fault act provides coverage for accidental bodily injury "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1); MSA 24.13105(1). Under the act, motorcycles are excluded from the definition of motor vehicles. MCL 500.3101(2)(c); MSA 24.13101(2)(c). However, § 3114(5) permits a motorcyclist who suffers accidental bodily injury arising from a motor vehicle accident to claim no-fault benefits from the insurers of the motorists and vehicle owners "involved in the accident," and sets forth a priority scheme for determining the

insurers' order of priority. "Motor vehicle accident" as used in the act "means a loss involving the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle regardless of whether the accident also involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle." MCL 500.3101(2)(f); MSA 24.13101(2)(f).

Thus, the issue to be resolved is whether the third-party defendants' insureds' motor vehicles might be found to have been sufficiently "involved" in a "motor vehicle accident" in which plaintiffs were injured to trigger liability under the no-fault act.

The test for determining motor vehicle "involvement" for no-fault liability purposes was set forth in *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975), in the context of a pre-no-fault insurance contract:

> [W]e conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

Recently, our Supreme Court appeared to adopt the *Kangas* test for purposes of no-fault liability. *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986).

In this case, the court granted summary disposition as to the third-party defendants, Mid-Century and National Ben Franklin, based on the absence of physical contact between the vehicles of their

insureds, Grossman and Hull, and the vehicle of Buda or the motorcycles. However, the court's reliance on a requirement of "physical contact" is inconsistent with the *Kangas* test. Moreover, it is not difficult to imagine a situation in which there may be a causal nexus between a motorist's conduct and an accidental injury quite apart from any physical contact between the insured vehicle and the other vehicles involved. See *Bromley v Citizens Ins Co of America*, 113 Mich App 131, 135; 317 NW2d 318 (1982) (fact that insured's car did not actually touch plaintiff's motorcycle held irrelevant as long as the causal nexus between the accident and the car is established.)

The relevant inquiry then is whether a causal nexus can be established that would link the injuries incurred in the accident to a motor vehicle. Here, the deposition testimony supports a reasonable inference that a sudden lane change of the lead vehicle, the semitrailer truck, caused every driver in the chain of traffic, which included Grossman and Hull, to make an emergency stop which contributed to plaintiffs' injuries.

When according Allstate the benefits of any reasonable doubt when reviewing the record, as we must in a motion for summary disposition premised on MCR 2.116(C)(10), the evidence does not preclude a finding that the trucker's action caused everyone in the chain of traffic to react to a single hazard which, in turn, created a risk for each motorist in the line. If indeed the trier of fact would so find, then the insurer of each motorist so "involved" would share in the liability to injured plaintiffs in accordance with § 3114(5). Thus, there remains a question of fact whether the Hull and Grossman vehicles in these circumstances were sufficiently "involved" in the accident to trigger

liability under the no-fault act. Accordingly, summary disposition was improper.

We note in passing that under the no-fault act fault is irrelevant, that is, the issue is not guilt or innocence but, rather, whether one fits within the protected class. *Sanford v Ins Co of North America,* 151 Mich App 747, 753; 391 NW2d 473 (1986), lv den 426 Mich 876 (1986).

Reversed.