*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALTER LOVE,

      Plaintiff-Appellee/Cross-Appellee,

and

THRIVE PHYSICAL THERAPY LLC,

      Intervening Plaintiff,

v

LASHAWN RUDOLPH,

      Defendant/Cross-Appellee,

and

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY and ALLSTATE
INSURANCE COMPANY,

      Defendants/Cross-Defendants/Cross-
      Appellees,

and

AUTO CLUB GROUP INSURANCE COMPANY,

      Defendant/Cross-Defendant-
      Appellant/Cross-Appellee,

and

THE HANOVER INSURANCE COMPANY,

      Defendant/Cross-Defendant/Cross-
      Appellant,

and

FOR PUBLICATION
December 18, 2025
1:57 PM

No. 369895
Wayne Circuit Court
LC No. 22-005380-NI

-1-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant/Cross-Defendant/Cross-
        Appellee,

and

FARMERS INSURANCE EXCHANGE,

        Defendant/Cross-Plaintiff/Cross-
        Appellee,

and

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

        Defendant-Appellee/Cross-Appellant.

_____

Before:  ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

BORRELLO, J.

This appeal is before this Court pursuant to our Supreme Court's order remanding this matter for consideration as on leave granted. *Love v Auto Club Group Ins Co*, ___ Mich ___; 16 NW3d 738 (2025). The issues before us involve a priority dispute under the no-fault act, MCL 500.3101 *et seq.*, among multiple insurance companies stemming from an accident involving a motorcycle and multiple motor vehicles. Defendant Auto Club Group Insurance Company appeals the trial court's orders denying summary disposition in favor of Auto Club on plaintiff's claims and defendant Farmers Insurance Exchange's cross-claims under MCR 2.116(C)(10) based on the court's conclusion that Auto Club was within the order of priority under MCL 500.3114(5) and had failed to establish that Auto Club satisfied the exclusion provided by MCL 500.3114(6). Defendants Citizens Insurance Company of the Midwest and The Hanover Insurance Company cross appeal the trial court's orders denying summary disposition under MCR 2.116(C)(10) on the issue whether the Volkswagen Jetta identified in the police report as Unit 3 was involved in the accident for purposes of MCL 500.3114(5). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of an accident involving a motorcycle and multiple motor vehicles. On May 27, 2021, plaintiff was operating his motorcycle and attempting to merge onto the highway. According to the police report, as one vehicle slowed to allow plaintiff to merge, another vehicle approaching from behind failed to slow down and rear-ended another vehicle, which initiated a chain reaction of collisions. One vehicle collided with plaintiff's motorcycle, throwing him off

the motorcycle. In total, according to the police report, the crash involved plaintiff's motorcycle and five other vehicles.[1]

The vehicle that, according to the police report, failed to slow down and caused the first rear-end collision of the chain, was driven by Lauren Greene. The vehicle was owned by Greene's mother, defendant Lashawn Rudolph. Rudolph indicated that Greene was driving the vehicle that day with Rudolph's permission. Rudolph and Greene did not live in the same household. Rudolph was not married, and she lived by herself. Greene lived with her grandmother or great-grandmother.

Rudolph had a policy of insurance for the vehicle issued by Auto Club. Rudolph elected not to have unlimited personal protection insurance (PIP) benefits on her policy and instead elected what was designated as "Option 4," which provided as follows:

| | |
|---|---|
| **Option 4:** Limited Coverage of $250,000, with some or all persons excluded from **PIP allowable expenses** coverage. This option is only available if you choose the $250,000 **PIP allowable expenses** limit. <br> • A **named insured** who wishes to exclude **PIP allowable expenses** must have **qualified health coverage** that is not Medicare. <br> • Any **resident relative** or spouse who wishes to exclude **PIP allowable expenses** must have **qualified health coverage.** <br> Anyone who is excluded will not have **PIP allowable expenses** coverage. Anyone who is not excluded will have $250,000 in **PIP allowable expenses** coverage. | |
| Risks | ANYONE YOU EXCLUDE WILL NOT HAVE **PIP ALLOWABLE EXPENSES** COVERAGE. In addition: <br><br> • Persons relying on **qualified health coverage** to pay for auto accident injuries should be aware that, unlike auto insurance, health insurance stops paying when the policy ends or is canceled. <br> • If any excluded person loses **qualified health coverage**, you must notify your insurer within 30 days of losing **qualified health coverage.** <br> • Within 30 days of losing **qualified health coverage**, if an excluded person is injured in an auto accident, coverage will be provided by the **Michigan Assigned Claims Plan** up to $2,000,000 if they have no other **qualified health coverage** or **PIP allowable expenses** coverage. <br> • A person who has not obtained **qualified health coverage** or **PIP allowable expenses** coverage within 30 days of the loss of coverage will not be entitled to any **PIP allowable expenses** benefits. <br> NOTE: Your insurance company must offer **excess attendant care**, which you may purchase for an additional premium. This coverage is only available to those who are not excluded from **PIP allowable expenses** coverage. Check with your agent or company for additional information. |
| Benefits | You will pay a reduced premium because you will not be charged a premium for **PIP allowable expenses** coverage for anyone who is excluded. |

Rudolph selected Option 4 and specifically excluded herself from PIP coverage:

---

[1] Recognizing that one of the issues presented on appeal is whether one of these vehicles was "involved" for purposes of MCL 500.3114(5), our statement that the crash involved 5 motor vehicles merely reflects that 5 motor vehicles collided in some sense during the overall incident in which the plaintiff motorcyclist was injured and should not be understood as resolving the issue whether any one of those vehicles in particular was legally "involved" for purposes of MCL 500.3114(5).



**Section B: PIP Allowable Expenses Coverage Options and Certification**
Make your selection carefully because the choice you make will have financial consequences. If you choose more than one option, your insurer will provide you with the option that has the highest level of benefits and will charge you the appropriate premium for that option.

**INITIAL ONE AND ONLY ONE** option on the line next to your choice.

Option Selected

_____ (Initials)  Option 1: Unlimited coverage **OR**

_____ (Initials)  Option 2: $500,000 per person per accident **OR**
DB

_____ (Initials)  Option 3: $250,000 per person per accident **OR**

☑  _L R_ (Initials)  Option 4: $250,000 per person per accident with exclusions **OR**

By selecting Option 4, you certify that one or both of the following are true:
- A **named insured** who is excluding **PIP allowable expenses** has **qualified health coverage** that is not Medicare
- Any **resident relative** or spouse who is excluding **PIP allowable expenses** has **qualified health coverage**.

| Full Name of Each Excluded Person | Date of Birth |
|---|---|
| Lashawn Rudolph | ▮▮▮▮ |
|  |  |
|  |  |
|  |  |
|  |  |

_____ (Initials)  Option 5: $50,000 per person per accident **OR**

By selecting Option 5, you certify that <u>both</u> of the following are true:
- The **applicant** or **named insured** is enrolled in Medicaid; AND
- Any spouse and all **resident relatives** have **qualified health coverage,** is enrolled in Medicaid, or are covered under another auto policy with **PIP allowable expenses** coverage.

_____ (Initials)  Option 6: No **PIP allowable expenses** coverage.

By selecting Option 6, you certify that <u>both</u> of the following are true:
- The **applicant** or **named insured** has coverage under both Medicare Parts A and B; AND
- **Any** spouse and all **resident relatives** have **qualified health coverage** or are covered under another auto policy with **PIP allowable expenses** coverage.

Notably, Rudolph did *not* elect Option 6, which provided as follows:

**Option 6:** No **PIP allowable expenses** coverage for anyone covered by this policy
You may select this option if:
- The **applicant** or **named insured** has coverage under both Medicare Parts A and B, AND
- Any spouse and all **resident relatives** covered by the policy have **qualified health coverage** or are covered under another auto policy with **PIP allowable expenses** coverage.

**Risks**  NO **PIP ALLOWABLE EXPENSES** COVERAGE WILL BE PROVIDED UNDER YOUR POLICY.
You and any other persons covered by this policy will not have **PIP allowable expenses** coverage. You and those persons may have to rely on other health coverage to pay for medical expenses resulting from injuries sustained in an auto accident, which may not cover all products and services that **PIP allowable expenses** covers.
- Persons relying on **qualified health coverage** to pay for auto accident injuries should be aware that, unlike auto insurance, health insurance stops paying when the policy ends or is canceled.
- If anyone covered by the policy loses **qualified health coverage**, you must notify your insurer within 30 days of loss of the coverage.
- Within the 30 days of losing **qualified health coverage**, if anyone covered by the policy is injured in an auto accident, coverage will be provided by the **Michigan Assigned Claims Plan** up to $2,000,000 if they have no other **qualified health coverage** or **PIP allowable expenses** coverage.
- A person who has not obtained **qualified health coverage** or **PIP allowable expenses** coverage within 30 days of the loss of coverage will not be entitled to any **PIP allowable expenses** benefits.

**Benefits**  You will pay a reduced premium because your policy will not be charged a premium for **PIP allowable expenses** coverage.

Plaintiff brought this action against Rudolph, Allstate Property and Casualty Insurance Company, Allstate Insurance Company, Auto Club, The Hanover Insurance Company, State Farm Mutual Automobile Insurance Company, and the Michigan Assigned Claims Plan and/or Michigan Automobile Insurance Placement Facility (MACP/MAIPF). In his complaint, plaintiff asserted negligence and owner's liability claims against Rudolph, an underinsured motorist claim against Allstate Property and Casualty as plaintiff's insurer, and claims for first-party benefits under the no-fault act against the named insurance companies and the MACP/MAIPF. The MAIPF/MACP assigned the matter to Farmers Insurance Exchange, which was substituted for the MAIPF/MACP as a party to the case.

-4-

Thrive Physical Therapy sought to intervene as a plaintiff based on medical treatment it provided to plaintiff. The motion to intervene was granted, and Thrive Physical Therapy's claim was subsequently dismissed due to a settlement between the parties.

Hanover moved for summary disposition under MCR 2.116(C)(10). Hanover first argued that there was no evidence that the Volkswagen Jetta identified in the police report as Unit 3, which was allegedly insured by Hanover, was involved in the motor vehicle accident at issue for purposes of the applicable priority statute, MCL 500.3114(5). Hanover maintained that Unit 3 was not involved in the accident for purposes of priority because it was not a cause of the accident and did not contact plaintiff as the injured party. Additionally, Hanover argued that it was not otherwise in the order of priority because the Jetta identified as Unit 3 was actually insured by Citizens Insurance Company of the Midwest. Hanover submitted a copy of the declarations page for a Citizens Policy purporting to cover the Jetta.

The driver of the Jetta was Grace Fifer. She gave a recorded statement describing the accident in relevant part as follows:

> Um, so I think I was going south. Yeah, I gotten onto the freeway, um, and I had started to speed up and get over into the, like, the first lane. Um, and I noticed everybody was kind of, um, slamming on their brakes, like, in front of me.
>
> *  *  *
>
> So I, I had, um, I had just looked in my rearview mirror, um, and there was a white car coming, um, like, coming up behind me. Um, and I had kind of, like, blinked my brakes, like, at him, like, to see if he would notice and slow down. . . .
>
> *  *  *
>
> So he's coming behind me and I can tell that he's coming, like, really fast. So I was just taught to pull over to the side, you know, get out of the way. So that's what I did. I got off, um, off to the side as far as I could, um, and he c-, like, hit me on the driver side, like the left side in the back. Um, he had just kinda clipped me. And then from what I can remember, he hit the car then, like, in front of me, and then it went off diagonally into the second, like, the middle lane, and hit, like, one or two cars, and then it came back into my lane. And I, I know for a fact there was a guy on a motorcycle who got hit, and I think the car in front of him. Um, and then I just waited and called my parents and asked what to do. And, um, the police showed up and they asked me what had happened, and I told them the same thing I'm telling you.

Plaintiff testified about the accident in his deposition as follows:

> *Q*. Okay. In your own words, can you describe how the accident happened for me?
>
> *A*. Not a whole lot. I don't-- I think I was -- when the accident happened, I was hit from behind and I got off the side of the freeway. I don't remember a

whole lot. I did get hit from behind. I don't remember. Like I guess I had to be a blackout and when I got up, I was on the side of the freeway.

Plaintiff testified that he was completely stopped when he was hit from behind. He did not know how many vehicles actually contacted his motorcycle. Plaintiff did not know what vehicles were involved in the accident, which vehicles may have caused the accident, how the accident was caused, or which vehicle hit him.

Greene testified that the traffic was "heavy." She described the accident as follows:

I was driving on Southfield, and -- I was driving on Southfield, and it was really bad traffic. So I was stopped and traffic or the speed started to pick up a little bit as we started to move. And as I'm moving, a car just like cuts me off completely as if I'm about to get hit. So I got over, and there was a car stopped, and I hit the back of them.

Greene did not see the motorcycle or which vehicle hit the motorcycle. Greene testified that her vehicle did not hit the motorcycle.

Farmers opposed Hanover's motion for summary disposition, arguing that there were questions of material fact whether the Volkswagen Jetta was involved in the motor vehicle accident for purposes of MCL 500.3114(5). Essentially relying on the description of the accident from the police report, Farmers argued that the Jetta was involved in the accident because it was actively involved in the collision chain when it was struck by another vehicle from behind and then set the vehicle in motion that struck plaintiff. This established a causal nexus between the Jetta and plaintiff's injuries. The police report described the accident as follows:

All Units were S/B M-39 Fwy in stop and go traffic, Unit 4 was slowing/stopping in right lane to allow Unit 5 to merge onto the fwy. Unit 1 in the right lane and unable to slow/stop, rear ending Unit 2 at high speed. This caused Unit 2 to rear-end /sideswipe unit 3 [the Jetta]. Unit 2 continued and rear-ending Unit 4. This caused Unit 4 to rear-end Unit 5 (motorcycle). The driver of Unit 5 was thrown from his motorcycle. Unit 2 continued in a[n] out[-]of[-]control skid into the left lane, facing the wrong way. Unit 2 and Unit 6 crashed head-on. Unit 2 came to rest in the right shoulder/lane facing the wrong way. Unit 1 ended up in the center lane, completely disabled.

Plaintiff also opposed Hanover's motion, similarly arguing that there was a question of material fact whether the Jetta was involved in the accident. Plaintiff relied primarily on Fifer's statement that she actively hit her brakes to flash the brake lights and influence another vehicle involved in the collision. Plaintiff further argued that the Jetta redirected the vehicle that hit it.

Plaintiff moved for summary disposition, arguing that he was entitled to no-fault benefits from Farmers as the insurer assigned through the MACP. Farmers acknowledged that plaintiff would be eligible for no-fault benefits from Farmers as the assigned servicing insurer because of the ongoing priority dispute. However, Farmers argued that it had been attempting to resolve plaintiff's claims and that plaintiff was being uncooperative. Farmers further maintained that

plaintiff had other coverage available. Farmers thus argued that plaintiff was not entitled to PIP benefits from Farmers.

Auto Club moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Auto Club argued that it was not in the order of priority under MCL 500.3114(5) because Rudolph had elected to decline PIP allowable expense coverage in her insurance policy with Auto Club and plaintiff was therefore prohibited from claiming under Rudolph's policy pursuant to MCL 500.3114(6). Rudolph and Auto Club also filed a response in opposition to Hanover's motion for summary disposition based on the same argument.

Plaintiff opposed Auto Club's motion for summary disposition. Plaintiff argued that Auto Club's policy documents showed that Rudolph had not elected to entirely opt out of PIP coverage. Instead, Rudolph had selected a $250,000 coverage limit applicable to anyone not excluded and then had specifically excluded only herself from PIP coverage.

State Farm filed a response agreeing that Auto Club was entitled to summary disposition because Rudolph had declined all PIP coverage and opposing the other motions for summary disposition because there remained genuine questions of fact regarding which vehicles were involved in the accident for purposes of determining priority among the insurers.

Farmers filed a motion for leave to file a cross-complaint, arguing that it was entitled to reimbursement for benefits paid on behalf of plaintiff against the higher order of priority insurers pursuant to MCL 500.3172(6). The trial court granted leave for Farmers to file the cross-complaint.

Hanover and Citizens responded with a joint pre-answer motion for summary disposition on the cross-complaint. Hanover and Citizens argued that there was no claim against Citizens because Citizens had not formally been named a defendant in the matter and that, regardless, summary disposition in favor of Hanover and Citizens was warranted for the same reasons argued in Hanover's earlier motion for summary disposition. Auto Club also moved for summary disposition regarding Farmers' cross-complaint on the same basis asserted by Auto Club in its earlier summary disposition motion regarding plaintiff's complaint.

Following a hearing, the trial court granted in part and denied in part Hanover's and Citizens' motions for summary disposition. The court granted summary disposition with respect to the issue whether Hanover was in the order of priority and dismissed Hanover with prejudice as a defendant in the matter. The court also granted plaintiff's request for leave to amend the complaint to add Citizens as a defendant. However, the trial court denied the motion with respect to the issue whether the Volkswagen Jetta identified in the police report as Unit 3 was involved in the accident for purposes of MCL 500.3114(5). Citizens was ordered to answer the cross-complaint filed by Farmers. The trial court entered another order granting in part plaintiff's motion for summary disposition as to entitlement to no-fault benefits from Farmers. The order further ordered Farmers to pay plaintiff no-fault benefits to which he was entitled and ordered plaintiff to file an amended complaint adding Citizens instead of Hanover as a party.

The trial court denied Auto Club's motions for summary disposition based on its conclusion that the coverage option selected by Rudolph only excluded Rudolph from PIP

coverage and provided up to $250,000 others claiming under the policy such that Auto Club remained in the order of priority under MCL 500.3114(5) and did not satisfy the exclusion provided by MCL 500.3114(6).

The trial court subsequently entered an order staying the proceedings while appellate remedies were pursued. This Court denied the application for leave to appeal, although Chief Judge GADOLA indicated that he would have granted leave. *Love v Rudolph*, unpublished order of the Court of Appeals, entered July 17, 2024 (Docket No. 369895). The Michigan Supreme Court subsequently entered an order stating, "in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted." *Love*, ___ Mich ___. Plaintiff's claim against Rudolph was dismissed with prejudice in accordance with a release executed by plaintiff. Citizens and Hanover filed a joint claim of cross-appeal.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Questions of statutory interpretation are also reviewed de novo on appeal. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019).

## III. PRIORITY – INSURED'S ELECTION TO EXCLUDE PIP COVERAGE

On appeal, Auto Club maintains that it is not in the order of priority applicable to an injured motorcyclist involved in a motor vehicle accident set forth in MCL 500.3114(5) because Auto Club's insured, Rudolph, had elected to decline PIP coverage in her policy pursuant to MCL 500.3109a(2) and such policies are excluded from the order of priority set forth in MCL 500.3114(5) by operation of MCL 500.3114(6).

MCL 500.3114 provides in relevant part as follows:

> (5) Subject to subsections (6) and (7), a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

-8-

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

(6) If an applicable insurance policy in an order of priority under subsection (5) is a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d, or as to which an exclusion under section 3109(2) applies, the injured person shall claim benefits only under other policies, subject to subsection (7), in the same order of priority for which no such election has been made. If there are no other policies for which no such election has been made, the injured person shall claim benefits under the next order of priority or, if there is not a next order of priority, under the assigned claims plan under sections 3171 to 3175.

(7) If personal protection insurance benefits are payable under subsection (5) under 2 or more insurance policies in the same order of priority, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies.

Here, Auto Club's insured, Rudolph, was the owner of a motor vehicle involved in the accident and Auto Club argues that she had elected a policy with no PIP coverage. The issue is whether plaintiff as the injured motorcyclist is prohibited from claiming benefits from Auto Club by operation of MCL 500.3114(6).

Resolution of this issue presents a question of statutory interpretation because PIP benefits "are mandated by statute under the no-fault act, MCL 500.3105; MSA 24.13105, and, therefore, the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Meemic Ins Co v Fortson*, 506 Mich 287, 298; 954 NW2d 115 (2020). "The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Mich Ass'n of Home Builders*, 504 Mich at 212 (quotation marks and citation omitted). Clear and unambiguous statutory language must be applied as written. *Id*. "Proper statutory interpretation requires: (1) reading the statute as a whole, (2) reading its words and phrases in the context of the entire legislative scheme, (3) while considering both the plain meaning of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions in harmony with the entire statutory scheme." *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019).

Under MCL 500.3114(6), an applicable insurance policy in the order of priority under MCL 500.3114(5) becomes excluded from the order of priority if it "is a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d, or as to which an exclusion under section 3109(2) applies." MCL 500.3114(6).

Turning to the first of these possible situations, MCL 500.3107d(1) provides as follows:

For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured

may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a qualified person, and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

MCL 500.3101[2] provides in relevant part:

     (1) Except as provided in sections 3107d and 3109a, the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway.

     (2) Except as provided in section 3107d, all automobile insurance policies offered in this state must include benefits under personal protection insurance, and property protection insurance as provided in this chapter, and residual liability insurance.

MCL 500.3107(1)(a) provides in relevant part that "[s]ubject to the exceptions and limitations in this chapter, . . personal protection insurance benefits are payable for . . . [a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

With respect to the conditions for eligibility to decline PIP coverage under MCL 500.3107d, subsection (7) provides in pertinent part:

     (7) As used in this section:

* * *

     (b) "Qualified health coverage" means either of the following:

     (*i*) Other health or accident coverage to which both of the following apply:

     (A) The coverage does not exclude or limit coverage for injuries related to motor vehicle accidents.

     (B) Any annual deductible for the coverage is $6,000.00 or less per individual. The director shall adjust the amount in this sub-subparagraph on July 1

---

[2] The recent amendment to this statute did not involve any changes to subsections (1) or (2), which are the only subsections relevant to the issue presented on appeal. See 2024 PA 224.

of each year by the percentage change in the medical component of the Consumer Price Index for the preceding calendar year. However, the director shall not make the adjustment unless the adjustment, or the total of the adjustment and previous unadded adjustments, is $500.00 or more.

(*ii*) Coverage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395lll.

(c) "Qualified person" means a person who has qualified health coverage under subdivision (b)(*ii*).

Furthermore, MCL 500.3107d(5) provides that an "election under this section applies to the applicant or named insured, the applicant or named insured's spouse, a relative of either domiciled in the same household, and any other person who would have had a right to claim personal protection insurance benefits under the policy but for the election."

Reading the above statutory provisions together, it is evident that under MCL 500.3107d(1), the named insured may decline PIP coverage for allowable expenses if the named insured is "a qualified person," meaning the named insured has health coverage under parts A and B of Medicare, *and* if household relatives also have the described required other coverage. MCL 500.3107d(1), (7)(b)(*ii*), and (7)(c); MCL 500.3107(1)(a).

Here, as Auto Club agrees, the record shows that Rudolph elected "Option 4" and specifically excluded herself from PIP coverage. The PIP coverage elections documents expressly stated that a named insured could only exclude PIP coverage pursuant to this option if the named insured had qualified health coverage that was *not* Medicare. Moreover, Auto Club also attached a letter to its motion for summary disposition that purported to indicate that Rudolph had health insurance through her employer, and Auto Club admits that there is "no evidence that Rudolph has Medicare Parts A and B." The record reflects that Rudolph did not elect "Option 6," which appears from the election documents to be the option that mirrors the opt-out provision set forth in MCL 500.3107d(1). Accordingly, the record does not indicate that the opt-out provision in MCL 500.3107d(1) is applicable in this case because Rudolph did not purport to choose it and would not have been eligible to choose it.

The second scenario provided by MCL 500.3114(6), pursuant to which an insurance policy may be excluded from the order of priority, requires application of "an exclusion under section 3109(2)." This statutory cross-reference appears to be a typographical error, and it appears that the properly intended statutory citation is MCL 500.3109a(2). MCL 500.3109(2) states, "An injured person is a natural person suffering accidental bodily injury." More on point, however, is MCL 500.3109a,[3] which provides in relevant part as follows:

---

[3] Under the interpretive doctrine of "scrivener's error," the "totality of context" may be given "precedence over a single word" when "on the very face of the statute it is clear to the reader that

(1) An insurer that provides personal protection insurance benefits under this chapter may offer deductibles and exclusions reasonably related to other health and accident coverage on the insured. *Any deductibles and exclusions offered under this section* must be offered at a reduced premium that reflects reasonably anticipated reductions in losses, expenses, or both, are subject to prior approval by the director, and *must apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household.*

(2) *For an insurance policy issued or renewed after July 1, 2020, the insurer shall offer to an applicant or named insured that selects a personal protection benefit limit under section 3107c(1)(b) an exclusion related to qualified health coverage.* All of the following apply to that exclusion:

(a) If the named insured has qualified health coverage as defined in section 3107d(7)(b)(*i*) that will cover injuries that occur as the result of a motor vehicle accident and if the named insured's spouse and any relatives of either the named insured or the spouse domiciled in the same household have qualified health coverage that will cover injuries that occur as the result of a motor vehicle accident, the premium for the personal protection insurance benefits payable under section 3107(1)(a) under the policy must be reduced by 100%.

(b) If a member, but not all members, of the household covered by the insurance policy has qualified health coverage that will cover injuries that occur as the result of a motor vehicle accident, the insurer shall offer a reduced premium that reflects reasonably anticipated reductions in losses, expenses, or both. The reduction must be in addition to the rate rollback required by section 2111f and the share of the premium reduction for the policy attributable to any person with qualified health coverage must be 100%.

(c) Subject to subdivision (d), *a person subject to an exclusion under this subsection is not eligible for personal protection benefits under the insurance policy.*

(d) If a person subject to an exclusion under this subsection is no longer covered by the qualified health coverage, the named insured shall notify the insurer that the named insured or resident relative is no longer eligible for an exclusion. All of the following apply under this subdivision:

(*i*) The named insured shall, within 30 days after the effective date of the termination of the qualified health coverage, obtain insurance that provides the

---

a mistake of expression (rather than of legislative wisdom) has been made." *Oshtemo Charter Twp v Kalamazoo Co Rd Comm*, 288 Mich App 296, 303; 792 NW2d 401 (2010).

security required under section 3101(1) that includes coverage that was excluded under this subsection.

(*ii*) During the period described in subparagraph (*i*), if any person excluded suffers accidental bodily injury arising from a motor vehicle accident, the person is entitled to claim benefits under the assigned claims plan.

(e) If the named insured does not obtain insurance that provides the security required under section 3101(1) that includes the coverage excluded under this subsection during the period described in subdivision (d)(*i*) and the named insured or any person excluded under the policy suffers accidental bodily injury arising from a motor vehicle accident, unless the injured person is entitled to coverage under some other policy, the injured person is not entitled to be paid personal protection insurance benefits under section 3107(1)(a) for the injury that occurred during the period in which coverage under this section was excluded. [Emphasis added.]

MCL 500.3107c provides in relevant part as follows:

(1) Except as provided in sections 3107d and 3109a, and subject to subsection (5), for an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured shall, in a way required under section 3107e and on a form approved by the director, select 1 of the following coverage levels for personal protection insurance benefits under section 3107(1)(a):

(a) A limit of $50,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a). The selection of a limit under this subdivision is only available to an applicant or named insured if both of the following apply:

(*i*) The applicant or named insured is enrolled in Medicaid, as that term is defined in section 3157.

(*ii*) The applicant's or named insured's spouse and any relative of either who resides in the same household has qualified health coverage, as that term is defined in section 3107d, is enrolled in Medicaid, or has coverage for the payment of benefits under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(b) A limit of $250,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(c) A limit of $500,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(d) No limit for personal protection insurance benefits under section 3107(1)(a).

(2) The form required under subsection (1) must do all of the following:

(a) State, in a conspicuous manner, the benefits and risks associated with each coverage option.

(b) Provide a way for the applicant or named insured to mark the form to acknowledge that he or she has read the form and understands the options available.

(c) Allow the applicant or named insured to mark the form to make the selection of coverage level under subsection (1).

(d) Require the applicant or named insured to sign the form.

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

(4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d) applies to the policy.

(5) *The coverage level selected under subsection (1) applies to the named insured, the named insured's spouse, and a relative of either domiciled in the same household, and any other person with a right to claim personal protection insurance benefits under the policy.*

(6) If benefits are payable under section 3107(1)(a) under 2 or more insurance policies, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies. [Emphasis added.]

To answer the question at issue in this case whether a given policy is excluded under MCL 500.3114(6) from the order of priority in MCL 500.3114(5) because of an exclusion under MCL 500.3109a(2), it is necessary to start at the beginning of the statutory scheme and more succinctly follow the precise elections made by the named insured in obtaining the policy at issue. Following this process, the answer becomes clear.

First, MCL 500.3101(1) requires motor vehicle owners to maintain the security required by the no-fault act, "[e]xcept as provided in sections 3107d and 3109a." Next, MCL 500.3107c(1) requires the applicant or named insured for an insurance policy providing the required no-fault insurance to select one of the four coverage levels listed in § 3107c(1) for PIP benefits payable for allowable expenses. Section 3107c(1) further provides that the selection is "subject to subsection (5)" and, again, that the exceptions "in sections 3107d and 3109a" apply. Subsection (5) in turn provides that the "coverage level selected under subsection (1) applies to the named insured, the

named insured's spouse, and a relative of either domiciled in the same household, and *any other person with a right to claim personal protection insurance benefits under the policy*." MCL 500.3107c(5) (emphasis added).

The next step is to determine the election made under MCL 500.3107c(1). Here, Rudolph selected "Option 4," which was designated, "Limited Coverage of $250,000, with some or all persons excluded from PIP allowable expenses coverage." The explanation also expressly states, "This option is only available if you choose the $250,000 PIP allowable expenses limit." Option 4 offered by Auto Club therefore corresponds—in part—to the option provided in MCL 500.3107c(1)(b) that states, "A limit of $250,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a)."

A complete statutory basis for Option 4 requires the joint consideration of MCL 500.3109a(2), which provides that "the insurer shall offer to an applicant or named insured that selects a personal protection benefit limit under section 3107c(1)(b) an exclusion related to qualified health coverage." As set forth in full earlier in this opinion, "a person subject to an exclusion under this subsection is not eligible for personal protection benefits under the insurance policy," a person must generally have qualified health coverage as defined in § 3107d(7)(b)(*i*) before the person may become subject to the exclusion under 500.3109a(2), and the individuals eligible for the exclusion are limited in general terms to the named insured and household relatives. MCL 500.3109a(2). Finally, MCL 500.3109a(1) states in pertinent part that "[a]ny deductibles and exclusions offered under this section . . . *must apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household*." (Emphasis added.)

Thus, MCL 500.3107c(1)(b) and MCL 500.3109a(2) expressly work in tandem and can be understood as providing both a limit on PIP coverage and a separate exclusion from any PIP coverage available only to certain designated individuals meeting certain conditions. The *limit* applies to anyone with a right to claim PIP benefits under the policy. MCL 500.3107c(5). However, any *exclusion* under MCL 500.3109a "must apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household." MCL 500.3109a(1).

Here, plaintiff undisputedly does not fall within the category of individuals eligible for this exclusion. Accordingly, the statutory scheme plainly does not provide the option, after choosing the coverage level of $250,000 in MCL 500.3107c(1)(b), to then choose to exclude anyone from eligibility for PIP benefits other than "the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household." MCL 500.3109a(1).

Returning to MCL 500.3114(6), there is no exclusion under MCL 500.3109a(2) that could apply with respect to the claim by plaintiff. Auto Club therefore is not excluded from the order of priority in MCL 500.3114(5) under MCL 500.3114(6). The trial court did not err by denying summary disposition in favor of Auto Club, and we affirm the trial court's ruling.

## IV. INVOLVEMENT OF SPECIFIC MOTOR VEHICLE FOR PURPOSES OF MCL 500.3114(5)

Next, Citizens and Hanover argue that the trial court should have granted summary disposition in their favor because there was no evidence that the Volkswagen Jetta designated as Unit 3 was "involved" in the accident for purposes of MCL 500.3114(5).

As previously stated, the applicable priority statute is MCL 500.3114(5), which provides as follows:

(5) Subject to subsections (6) and (7), a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

"The 'involvement of a vehicle' standard, which sets forth the priority of potential insurers' liability for no-fault benefits, 'encompasses a broader causal nexus between the use of the vehicle and the damage' than is required under the 'arising out of' standard under MCL 500.3105(1)." *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 396 n 1; 838 NW2d 910 (2013) (citation omitted). This Court has explained:

There is no "iron-clad rule" as to what level of involvement is sufficient under MCL 500.3105. However, "while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for." "The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." The causal connection between the injuries and the motor vehicle "cannot be extended to something distinctly remote[.]" Moreover, the injuries must be more than "tangentially related to the use of an automobile" to trigger the entitlement to no-fault benefits. Actual physical contact between a motorcycle and a motor vehicle is not required to establish the requisite involvement of a motor vehicle in an accident as long as "the causal nexus between the accident and the car is established." For a motor vehicle to be involved in an accident, it "must actively, as opposed to passively, contribute to the accident," and have "more than a random association with the accident scene." "[T]here must be some activity, with respect to the vehicle, which somehow contributes to the happening of the accident." [*Id.* at 395-396 (citations omitted; second alteration in original).]

-16-

In *Greater Flint HMO v Allstate Ins Co*, 172 Mich App 783, 785; 432 NW2d 439 (1988), this Court was presented with a multiple-vehicle and motorcycle collision that occurred on a freeway. A semi-truck moved into the left lane, causing the vehicle behind the semi-truck to stop suddenly. *Id*. Another driver in the chain of traffic failed to respond in time and multiple rear-end collisions occurred. *Id*. The crash also involved motorcyclists. *Id*. On summary disposition, the trial court found that there was a question of material fact whether there was an impact between the motorcycles and a vehicle driven by Robert Buda. *Id*. at 786. However, the trial court granted summary disposition in favor of the third-party defendant insurers "on the basis of the absence of contact between the vehicles driven by [Barbara] Grossman and [Kirby] Hull [who were insured by the third-party defendant insurers], and the vehicle driven by Buda or the motorcycles." *Id*.

The issue addressed by this Court in *Greater Flint HMO* was "whether the third-party defendants' insureds' motor vehicles might be found to have been sufficiently 'involved' in a 'motor vehicle accident' in which [the motorcyclist plaintiffs] were injured to trigger liability under the no-fault act." *Id*. at 787. This Court concluded as follows:

> In this case, the court granted summary disposition as to the third-party defendants, Mid–Century and National Ben Franklin, based on the absence of physical contact between the vehicles of their insureds, Grossman and Hull, and the vehicle of Buda or the motorcycles. However, the court's reliance on a requirement of "physical contact" is inconsistent with the [applicable] test. Moreover, it is not difficult to imagine a situation in which there may be a causal nexus between a motorist's conduct and an accidental injury quite apart from any physical contact between the insured vehicle and the other vehicles involved.

> The relevant inquiry then is whether a causal nexus can be established that would link the injuries incurred in the accident to a motor vehicle. Here, the deposition testimony supports a reasonable inference that a sudden lane change of the lead vehicle, the semitrailer truck, caused every driver in the chain of traffic, which included Grossman and Hull, to make an emergency stop which contributed to plaintiffs' injuries.

> When according Allstate the benefits of any reasonable doubt when reviewing the record, as we must in a motion for summary disposition premised on MCR 2.116(C)(10), the evidence does not preclude a finding that the trucker's action caused everyone in the chain of traffic to react to a single hazard which, in turn, created a risk for each motorist in the line. If indeed the trier of fact would so find, then the insurer of each motorist so "involved" would share in the liability to injured plaintiffs in accordance with § 3114(5). Thus, there remains a question of fact whether the Hull and Grossman vehicles in these circumstances were sufficiently "involved" in the accident to trigger liability under the no-fault act. Accordingly, summary disposition was improper.

> We note in passing that under the no-fault act fault is irrelevant, that is, the issue is not guilt or innocence but, rather, whether one fits within the protected class. [*Id*. at 787-789 (citations omitted).]

The same analysis is applicable in the instant case. Here, the record reflects that Fifer, as the driver of the Volkswagen Jetta identified as Unit 3, saw a vehicle approach her from behind and traveling "really fast," which led Fifer to drive off the side of the road to "get out of the way." Fifer's vehicle was then hit or "clipped" on the driver side by a vehicle that continued to strike other vehicles in the chain of vehicles that eventually struck plaintiff's motorcycle. Viewing this evidence in the light most favorable to the nonmoving parties, a jury could reasonably conclude that the driver approaching from behind at an excessive speed for the stop-and-go traffic caused each driver in that driver's path, including Fifer, to take emergency action in response to the hazard, which contributed to the crash that caused injuries to the motorcyclist plaintiff. *Id.* If the jury so found, then Fifer's vehicle would be "involved" in the accident. *Id.* Based on this genuine question of material fact regarding the involvement of Fifer's vehicle, the trial court did not err by denying summary disposition on this issue. We thus also affirm this ruling.

Affirmed. No costs are awarded. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Matthew S. Ackerman
/s/ Anica Letica

-18-